Argued and submitted June 3, reversed September 18, 1996

Donna HORLACHER,
*Respondent,*

*v.*

MID-CENTURY INSURANCE,
a California corporation,
*Appellant.*

(CV5-0571; CA A90508)

923 P2d 1317

Wm. E. Schireman argued the cause for appellant. With him on the brief was Frohnmayer, Deatherage, Pratt, Jamieson & Clarke, P.C.

Lawrence Gorman argued the cause for respondent. With him on the brief was Brothers, Steelhammer & Ash.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

Edmonds, J., dissenting.

**ARMSTRONG, J.**

Plaintiff was injured in a single-vehicle accident. The car was driven by her husband. After the accident, plaintiff received personal injury protection (PIP) benefits from defendant, husband's insurer, in the amount of $14,521.20.[1] She subsequently filed a claim against husband alleging negligence. She settled that claim with defendant for an amount equal to the liability limit of her husband's insurance policy.

Defendant contended that it could offset from the settlement the amount of the previously paid PIP benefits. Defendant paid plaintiff that amount. Plaintiff argued that ORS 742.544 applied and prevented defendant from offsetting PIP payments made to her after the effective date of the statute. Plaintiff therefore filed this declaratory judgment action to determine whether defendant was entitled to the offset. The trial court concluded that defendant was not and entered judgment for plaintiff for $8,833.08. Defendant appeals and we reverse.

ORS 742.544 took effect on November 1, 1993, and applies to "losses that occur on or after" that date. *See* Or Laws 1993, ch 709, §§ 9, 13 and 14. It provides:

"(1) A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560 suffered by that person. As used in this section, 'total amount of benefits' means the amount of money recovered by a person from:

"(a) Applicable underinsured motorist benefits described in ORS 742.502(2);

"(b) Liability insurance coverage available to the person receiving the personal injury protection benefits from other parties to the accident;

"(c) Personal injury protection payments; and

---

[1] Under the insurance policy issued to husband by defendant, plaintiff was an individual covered by the policy and was, therefore, entitled to recover PIP benefits under it.

"(d)   Any other payments by or on behalf of the party whose fault caused the damages.

"(2)   Nothing in this section requires a person to repay more than the amount of personal injury protection benefits actually received."

To begin with, we note that the parties and the trial court seem to have operated under a misunderstanding about the statute. The parties focused on whether the statute applies to cases in which the accident causing the loss occurred before the effective date of the act. They also argued about whether the statute applies when there is a single insurer involved in the case. The parties failed to determine as an initial matter, however, whether the total amount of benefits paid to plaintiff exceeded her total economic damages as defined in ORS 18.560.[2]

Plaintiff alleged in her complaint that "[t]he total amount of PIP benefits paid by defendant did not exceed the economic damages suffered by plaintiff as a result of the accident as the term 'economic damages' is defined in ORS 18.560." That is not the proper comparison. The parties should have determined whether the total amount that plaintiff received, including the settlement that she received from defendant, exceeded her economic damages and, if so, by what amount. Only then could the court determine whether ORS 742.544 could affect defendant's right to be reimbursed for the PIP benefits that it had paid to plaintiff, based on the issues framed by the parties.

Nevertheless, the parties' only argument below and on appeal is whether ORS 742.544, which applies only to "losses" occurring on or after November 1, 1993, requires that

---

[2] ORS 18.560 provides in relevant part:

"(2)  As used in this section:

"(a)  'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

the incident causing the injury or damage occur on or after November 1, 1993, or whether it applies to damages that accrue on or after November 1, 1993, for incidents that occurred before that date. Plaintiff argues that losses occur when costs are incurred, and not at the moment that an accident occurs. Defendant argues that a "loss" occurs when the event that causes injury occurs. We agree with defendant.

Typically, when an injury-causing event occurs that is covered by an insurance policy, an insured must report the "loss" and subsequently file a "proof of loss" that identifies the damages for which the insured seeks compensation. In that system, the loss occurs at the time of the accident. Nothing in the text or context of ORS 742.544 suggests that the legislature intended to draw a distinction between damages occurring before and after the effective date of the act, as opposed to incidents occurring before and after that date. The phrase that makes the statute applicable to "losses that occur on or after" November 1, 1993, must be understood to require the cause of the injury or damage to have occurred on or after November 1, 1993, for the statute to apply.

The dissent disagrees, arguing that each additional day missed from work as a result of an accident, or each additional visit to a doctor, constitutes a new loss. The dissent is wrong. A loss occurs when an injury-causing event occurs, even if the full measure of damages caused by that event is not then known or knowable. Each additional increment of damage arising from the original injury is not a new loss.

In addition, the dissent mistakenly assumes that the parties agreed that plaintiff's economic damages exceeded $37,600 and that she had received only $25,000 of those damages. 143 Or App at 572. The record does not support that assumption.

The dissent also asserts that our decision fails to give effect to the policy embodied in ORS 742.544, because our decision allows defendant to obtain a reimbursement of PIP benefits from plaintiff when plaintiff's economic damages have not been paid. *Id.* at 572. As noted, the record does not support that conclusion about the extent of plaintiff's economic damages. Moreover, the dissent is confused about the import of our decision. There is no dispute between the

majority and the dissent over how ORS 742.544 works. The dispute is over the *timing* of the policy change made by the statute. A dispute over the timing of the policy change is not a dispute over the policy itself.[3]

Finally, the dissent argues that the legislature would have used a phrase other than losses occurring on or after November 1, 1993, if it had intended ORS 742.544 to take effect in the manner in which we conclude that it did. It suggests, for example, that the legislature would have made the statute apply to claims or causes of action accruing on that date if it had sought to achieve the result that we say that it did. *Id.* at 572-73. Here again, the dissent is wrong.

The statute addresses the reimbursement rights of insurance companies against their insureds. Those rights arise from claims or causes of action that insureds have against *other* people, not against their insurance carriers. Consequently, it would not make sense to speak of claims or causes of action as the triggering event for coverage of the new law, because that language generally is used to control the operative date of laws that address the rights of parties who have claims or causes of action against each other. Given the subject of ORS 742.544, the reference to "losses" occurring on or after a certain date serves the same purpose as a reference to claims or causes of action does in statutes that address the rights of people who are on opposite sides of the relevant claims or causes of action. Hence, ORS 742.544 applies to injury-causing events that occur on or after November 1, 1993.[4] The accident in this case took place before November 1, 1993. Thus, the trial court erred in holding that ORS 742.544 applied to this case.

Reversed.

---

[3] Of course, if our decision delays the implementation of the new policy beyond the time that the legislature intended it to apply, then our decision conflicts with the statute. That, however, is not the argument that the dissent makes.

[4] Viewed that way, the reference to losses as the triggering event for application of the new statute is not different from a reference to claims in statutes in which claims create the setting in which the statutes apply. A loss occurs on a given date, but the amount of the loss may not then be known or knowable. Similarly, a claim arises on a given date, but the amount of the claim may not then be known or knowable. Later accrual of damages does not create a new loss any more than it creates a new claim.

**EDMONDS, J.,** dissenting.

ORS 742.544 took effect on November 1, 1993, and according to the uncodified language of Oregon Laws 1993, chapter 709, section 13, applies only to "losses" that occur on or after that date. Defendant argues that ORS 742.544 is inapplicable to plaintiff's claim because her accident occurred before the effective date of the statute. The majority agrees with defendant's argument. I disagree with the interpretation of the statute's meaning by the majority because it is inconsistent with the expression of the legislature's intent when it enacted the statute.

The issue about what the legislature meant when it used the word "losses" in section 13 involves a question of statutory interpretation. ORS 742.544 provides:

"(1) A provider of personal injury protection benefits shall be reimbursed for personal injury protection payments made on behalf of any person only to the extent that the total amount of benefits paid exceeds the economic damages as defined in ORS 18.560 suffered by that person. As used in this section, 'total amount of benefits' means the amount of money recovered by a person from:

"(a) Applicable underinsured motorist benefits described in ORS 742.502(2);

"(b) Liability insurance coverage available to the person receiving the personal injury protection benefits from other parties to the accident;

"(c) Personal injury protection payments; and

"(d) Any other payments by or on behalf of the party whose fault caused the damages.

"(2) Nothing in this section requires a person to repay more than the amount of personal injury protection benefits actually received."

We are to begin our analysis of the legislature's intent in enacting ORS 742.544 by examining the text and the context of the statute. The statute is about personal injury protection (PIP) benefits. PIP benefits consist of payments for expenses, loss of income and loss of essential services resulting from a covered event as provided in ORS 742.524. ORS 742.520(3).

By their very nature, the losses for which PIP benefits compensate do not necessarily occur only at the time of the accident, at the time that a claim is made or when a lawsuit is filed. For example, medical expenses are generally ongoing during the duration of the need for treatment arising out of an accident. Similarly, lost wages generally are not ascertainable losses at the time of the accident. In context, the word "losses" in section 13 necessarily connotes a continuum of losses flowing from the accident. When it is used in conjunction with the context of ORS 742.544, "losses" necessarily mean those expenses or loss of income and services that continue to occur after the injury-causing event. Thus, the majority's assertion that "losses" occur only at the time of the accident is inconsistent with the context of ORS 742.544.

Even if the text and the context of the statute are considered to be unclear regarding the meaning of "losses," the legislative history of the statute demonstrates conclusively what the legislature had in mind. ORS 742.544 was enacted in 1993 by the Oregon legislature[1] in response to our decision in *Babb v. Mid-Century Ins. Co.*, 110 Or App 67, 821 P2d 424 (1991), *rev den* 313 Or 209 (1992). In that case, the plaintiff was paid $5,000 in PIP benefits by her insurer. The insurer then sought reimbursement from the tortfeasor's insurer. That insurer did not reimburse the plaintiff's insurer but, instead, offered its insured's liability limits to the plaintiff because her damages exceeded the limits. The plaintiff accepted, and the tortfeasor's insurer issued a draft payable to the plaintiff and her insurer. When they negotiated the draft, the insurer received the $5,000 as reimbursement for the PIP benefits, and the plaintiff reserved the right to contest the reimbursement. *Id.* at 69. The plaintiff brought a declaratory judgment action to determine her rights under the existing law and her policy. We held under former ORS 742.534(1) that insureds, when they received monies from the tortfeasor's insurer, were required to repay their own insurance companies for PIP benefits received, even though the insured's damages exceeded the amount of available insurance. *Id.* at 70-71. Consequently, the plaintiff was

---

[1] Or Laws 1993, ch 709, §§ 9, 13 and 14.

required to reimburse her insurer for the $5,000 even though her damages exceeded the amounts she had received.

Under our holding in *Babb*, insureds were required to repay PIP benefits regardless of whether their damages exceeded the amount of available insurance. By promulgating ORS 742.544, the legislature intended that reimbursement of benefits could be required only *after* the insured's economic damages as defined in ORS 18.560 (damages comprised of verifiable monetary losses) were ascertainable and a comparison could be made with the total amount of benefits paid. The majority's premise is that covered "losses" as contemplated by section 13 relate only to losses occurring at the time of the event causing the injury and not those incurred thereafter. That interpretation defeats the legislature's intent to change the law to permit insureds to retain PIP benefits when their economic damages exceed the amount of available insurance. As illustrated by the facts in this case, the majority's decision requires plaintiff to reimburse to defendant PIP benefits in the amount of $8,833 paid to plaintiff after November 1, 1993, even though it appears that the parties agree that plaintiff's economic damages exceed $37,600 and that she has received only $25,000 in total benefits.

Finally, had the legislature intended that the statute apply only to injury-causing events that occurred on or after November 1, 1993, it could have said so. Instead, it chose to employ the generic word "losses," a word that has a broader and different meaning from the words "occurrence" or "accident," words typically used to describe the events that trigger insurance coverage. The majority equates the word "losses" with the time of the accident and thereby changes the concept embodied in section 13 expressed by the use of the word "losses." There is nothing in the statutory scheme or the legislative history that suggests that such a meaning was intended. As plaintiff points out, the legislature knows how to limit the effectiveness of its enactments to apply to particular claims by providing that amendments apply only to "causes of actions" or to "claims" arising after a particular date.[2] In effect, the majority by its interpretation has violated

---

[2] *See* Or Laws 1987, ch 774, § 27 and Or Laws 1995, ch 696, § 7.

ORS 174.010, which forbids courts from inserting into a statute what is not there.

In sum, defendant's argument that the legislature intended ORS 742.544 to apply to claims arising from accidents occurring on or after November 1, 1993, is not supported by the context of the statute, the purpose of the statute or general rules of statutory construction. When the legislature used the word "losses," it must have meant those dates on which plaintiff incurred the damages contemplated by the PIP statutes. Therefore, I agree with plaintiff that defendant is not entitled to reimbursement for those benefits paid for expenses or losses that occurred after November 1, 1993.

Accordingly, I dissent.